UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALYSSA THOMAS,

    Plaintiff,

v.

AUTOZONE, INC., ET AL.,

    Defendants.

_____/

Case No. 17-10126

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [28]**

Plaintiff Alyssa Thomas commenced this sexual harassment and retaliation action against Defendants AutoZone, LLC ("AutoZone") and Cory Schultz on January 16, 2017. Before the Court is Defendant AutoZone's Motion for Summary Judgment [28] filed on May 4, 2018. The Motion is fully briefed. The Court held a hearing on the Motion on October 23, 2018. For the reasons explained below, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment [28].

**FACTUAL BACKGROUND**

On September 4, 2013, Plaintiff began working at AutoZone's Port Huron Store. Plaintiff was employed as a part-time commercial driver in the Store's Commercial Department. At the time of Plaintiff's employment, Andrea Childers

was the Store Manager, Vicki Summerer was the Commercial Manager, and Cory Schultz was a Part Sales Manager. As managers, Childers, Summerer, and Schultz wore grey shirts. As a part-time employee, Plaintiff wore a red shirt. Since she was in the Commercial Department, Plaintiff reported directly to Summerer, who was primarily responsible for drafting Plaintiff's schedule. When Summerer was absent, however, Plaintiff occasionally reported to Childers and Schultz.

Throughout the first year of her employment, Plaintiff's hours fluctuated each week, ranging from 10 to 25 hours. Plaintiff was eager to work more hours, so she could earn money to support herself and her child. She requested additional hours from Summerer who declined her request because of performance issues. Vicki Summerer Dep. 86:3-10, Feb. 8, 2018. Throughout her employment, Plaintiff received write-ups known as "Corrective Action Reviews" for workplace policy violations such as using her phone while driving and tardiness.

In September 2014, Defendant Schultz began sexually harassing Plaintiff at work. This started when Schultz took Plaintiff's phone without her permission and discovered naked photos of her. The harassment continued for two months. Schultz told Plaintiff that he would get her more hours if she gave him "sex, a blowjob, or naked pictures." Schultz admitted to repeatedly requesting oral sex from Plaintiff, asking her if she can deep throat, and talking about "smashing her vagina." Coty Schultz Dep. 34:4-23, Mar. 14, 2018.

On November 29, 2014, Plaintiff reported the harassment to Childers. She testified that she did not report before that date because she was afraid that no one would believe her.

Separately, Summerer testified that, on November 29, 2014, she decided that she would no longer schedule Plaintiff for long drives up north because she felt that Plaintiff took an unreasonable amount of time to complete the trips. Summerer Dep. 102:8-16. Summerer claims that she had previously spoken with Plaintiff about the length of time she took to make deliveries. *Id.* at 48:2-9. Plaintiff testified, however, that November 29th was the first time Summerer spoke with her about this issue. Pl.'s Dep. 130:8-20, Feb. 7, 2018. Plaintiff was never written up for late delivery times.

On December 1, 2014, Childers opened the Store with Summerer and told her about Plaintiff's allegations against Schultz. Summerer was shocked and thought Plaintiff was lying. Later that day, Summerer mentioned to Childers that she had decided to prohibit Plaintiff from driving up north. Summerer Dep. 97:16-25.

On December 2, 2014, Childers discussed the harassment allegations with Plaintiff directly. Plaintiff testified that Childers "didn't believe her" and "made [her] feel wrong." Pl.'s Dep. 37:20. Also on that day, Summerer told Plaintiff, for the first time, that she would not schedule her for drives up north in the future.

Plaintiff was upset and told Summerer that she felt like she was being punished for reporting Schultz. Summerer Dep. 106:5-10.

Thereafter, AutoZone began an investigation into the sexual harassment allegations. Regional Human Resources Manager, Willie Banks, interviewed Plaintiff on December 11, 2014. During the interview, Plaintiff shared audio recordings which documented Schultz's conduct. Plaintiff testified that, during the interview, Banks asked her what she did to make Schultz harass her. Pl.'s Dep. 23:1-8.

The following day, Banks interviewed Schultz. After listening to the recordings and interviewing Schultz, Banks believed that Schultz had violated AutoZone's sexual harassment policy and recommended termination. On December 12, 2014, before AutoZone could terminate his employment, Schultz resigned.

Plaintiff continued to work at AutoZone through mid-March 2015. During those months, her hours were reduced significantly. Her payroll records show that from December 2014 to March 2015, she worked an average of 8 hours per week, compared to the average of 20 hours per week she worked from September 2013 to November 2014. [Dkt. # 28-1]. Summerer acknowledged that she had reduced Plaintiff's hours during this period but maintains that it was "due to her performance issues." Summerer Dep. 103:14-19.

On March 18, 2015, Plaintiff quit her job at AutoZone, partly because she was not getting enough hours to support herself. On March 27, 2015, Plaintiff filed a harassment and retaliation claim with the EEOC. Plaintiff received a Notice of a Right to Sue on October 24, 2016.

Plaintiff commenced this action against Defendants AutoZone and Schultz on January 16, 2017. She alleges hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation in violation of Title VII and Michigan's Elliot Larsen Civil Rights Act ("ELCRA").

On May 15, 2017, the action was stayed as to Schultz because he had filed for Chapter 11 bankruptcy.

AutoZone filed this Motion for Summary Judgment [28] on May 4, 2018. Plaintiff filed a Response [31] on June 1, 2018. AutoZone filed a Reply [32] on June 22, 2018. On October 23, 2018, the Court held a hearing on the Motion.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to

support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Sexual Harassment

To establish a prima facie case of hostile work environment based on sexual harassment, Plaintiff must show that: "1) [she] belonged to a protected group; 2) [she] was subjected to communication or conduct on the basis of sex; 3) [she] was subjected to unwelcome sexual conduct or communication; 4) the unwelcome conduct or communication was intended to or did substantially interfere with [her] employment or created an intimidating, hostile, or offensive work environment; and 5) respondeat superior." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 470 (6th Cir. 2012). For purposes of this Motion, AutoZone concedes that Plaintiff has satisfied the first four prongs. AutoZone argues only that it is not vicariously liable for Schultz's harassment.

"Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). At the hearing, Plaintiff clarified that she is proceeding solely on a strict liability theory

against AutoZone. Accordingly, to hold AutoZone liable for Schultz's conduct, Plaintiff must first establish that Schultz was her "supervisor" under Title VII.[1]

Plaintiff alleges both quid pro quo and hostile work environment sexual harassment in violation of Title VII and the ELCRA.[2] Quid pro quo sexual harassment "occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008). As such, to establish quid pro quo sexual harassment, Plaintiff would need to show that Schultz was authorized to take, and took, some tangible employment action against her. *Vance*, 570 U.S. at 440. On the other hand, to establish hostile work environment harassment, Plaintiff need not

---

[1] Establishing that the harasser was the claimant's supervisor is a prerequisite for strict liability against the employer. If Schultz were Plaintiff's co-worker, as opposed to her supervisor, negligence would "provide[] the better framework for evaluating [AutoZone's] liability." *Vance*, 570 U.S. at 439. Had Plaintiff pursued a negligence theory, as an alternative to strict liability, she could establish vicarious liability by demonstrating that AutoZone "was negligent in controlling working conditions." *Id.* In this instance, however, Plaintiff has waived this argument.

[2] The labels "*quid pro quo* and hostile work environment are not controlling for purposes of establishing employer liability . . . ." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Nonetheless, they are relevant to Title VII cases to the extent that they distinguish between cases in which a threat is carried out—quid pro quo—and those which involve offensive conduct in general—hostile work environment. *Id.* at 753.

show Schultz took a tangible employment action against her but must overcome AutoZone's affirmative defense under *Ellerth*. *Id.*

The Court need not distinguish between Plaintiff's quid pro quo and hostile work environment claims because she cannot meet her initial burden of establishing that Schultz was her supervisor. "An employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* A tangible employment action is "a significant change in employment status," including: "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

Despite his title as manager, Schultz does not constitute a supervisor because he was not authorized to hire, fire, demote, or promote Plaintiff or any other employee. *See Equal Emp't Opportunity Comm'n v. AutoZone, Inc.*, 692 F. App'x 280, 283 (6th Cir. 2017) (holding that AutoZone did not authorize Townsel, the store manager, to take tangible employment action against his victims, and explaining that Townsels' "ability to direct the victims' work at the store and his title as store manager [did] not make him the victims' supervisor for purposes of Title VII."); *see also Hylko v. Hemphill*, 698 F. App'x 298, 299 (6th Cir. 2017) (holding that, despite his title as supervisor, Hemphill was not Hylko's supervisor under Title VII because he lacked the authority to promote, to demote, or to fire Hylko).

Plaintiff submits that by vesting Schultz with the authority to schedule her hours, AutoZone empowered Schultz to cause a significant change in Plaintiff's benefits. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 217 (3d Cir. 2017) (noting that "[g]iven Marshall's power as a custodial foreman to even allow Moody to work, he could effect a 'tangible employment action' by setting her hours and hence her pay.").

Plaintiff's reliance on *Moody*, a Third Circuit decision, is misguided. The Sixth Circuit has explained that "what matters under Vance" is whether the alleged supervisor could "hire the employees he harassed." *EEOC v. AutoZone*, 692 F. App'x at 284 (6th Cir. 2017). Even assuming Schultz could make changes to Plaintiff's schedule, his "ability to direct [her] work at the Store" does not render him a supervisor for purposes of vicarious liability. *Id.* at 283.

In the alternative, Plaintiff submits that even if Schultz was not actually authorized to take tangible employment action against her, AutoZone is liable nonetheless because she reasonably believed that he was so authorized. *See Hylko*, 698 F. App'x at 299. Plaintiff testified that she "assumed management – any management position in the building" could fire an employee but acknowledged that she had no "evidence that would support [that] theory." Pl.'s Dep. 107-12:15; 108:7-10.

Given that Plaintiff has provided no evidence to support her claim that she reasonably believed Schultz could fire her, her Title VII sexual harassment claim against AutoZone must fail. Because she can neither demonstrate that Schultz was a supervisor within the meaning of Title VII nor that she reasonably believed Shultz was her supervisor, the Court need not reach the question of whether a reduction in hours constitutes a "tangible employment action" for purposes of distinguishing between her quid pro quo or hostile work environment claims. Plaintiff's ELCRA quid pro quo claim fails for the same reasons. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 825 (6th Cir. 2013) (noting that the legal standards governing Title VII claims and corresponding ELCRA claims are nearly identical).

**II. Retaliation**

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework governs Title VII retaliation claims based on circumstantial evidence. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792-93 (6th Cir. 2000). First, Plaintiff bears the burden of establishing a prima facie case of retaliation. If Plaintiff establishes a prima facie case, the burden shifts to Defendant to set forth a legitimate business reason for the adverse employment action. Finally, the burden shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for retaliation.

**A. Prima facie case**

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that: 1) she engaged in a protected activity; 2) Defendant knew of her protected conduct; 3) Defendant took an adverse employment action towards her; and 4) there was a causal connection between the protected activity and the adverse employment action. *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 598 (6th Cir. 2009) (internal citations omitted).

AutoZone concedes that Plaintiff has satisfied the first three prongs, arguing only that Plaintiff cannot meet her burden with respect to demonstrating a causal connection between her act of reporting Schultz and the reduction in her hours.

"[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Galeski v. City of Dearborn*, 435 F. App'x 461, 469 (6th Cir. 2011).

Childers informed Plaintiff that she would no longer be allowed to conduct up north deliveries on December 2, 2014. This took place just three days after November 29th, the day on which Plaintiff told Childers about the sexual harassment. Summerer claims that she made the decision regarding up north deliveries on November 29th, prior to hearing about the allegations against Schultz. But Summerer's testimony that this timing was a "coincidence" is hardly convincing

in light of the fact that she did not communicate her decision to anyone until December 1st, *after* she had learned that Plaintiff had reported Schultz.

Childers and Summerer's antagonistic responses to Plaintiff further support a finding of causation. Summerer angrily told Plaintiff to "look her in the face" and tell her that she was "telling the truth about Coty," and admitted that she didn't believe Plaintiff until "Coty walked out the door" on December 12, 2014. Summerer Dep. 107:21-25; 108:18-20.

The unusually close temporal proximity between Plaintiff's complaint of sexual harassment and AutoZone's prohibition on up north deliveries, coupled with Childers and Summerer's hostile reactions to the accusations against Schultz, sufficiently establish a causal connection between the two activities for purposes of alleging a prima facie case of retaliation.

**B. Legitimate business reason**

AutoZone contends that it cut Plaintiff's hours solely for performance reasons. Childers testified that Plaintiff "was unreliable as an employee, she would call in, she would show up late, and she'd ask to leave early." Childers Dep. 66:1-2, Apr. 3, 2018. Moreover, AutoZone maintains that, on November 29, 2014, Summerer decided to stop sending Plaintiff on deliveries up north because she took too long. AutoZone further maintains that Summerer made this decision before Plaintiff reported Schultz to Childers.

## C. Pretext

"A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012).

Plaintiff argues that the fact that she was never written up for late delivery times demonstrates that her performance did not actually motivate the reduction in her hours. Additionally, despite documentation establishing a decrease in hours, Childers refused to even acknowledge that Plaintiff's hours were reduced during her last few months of employment. Childers Dep. 56:16-18.

Plaintiff further argues that her allegedly poor performance was insufficient to warrant such a significant drop in hours. Plaintiff points to the testimony of Mary Ellery, another part-time driver for AutoZone who worked under Summerer. Ellery testified that Summerer wrote her up several times for tardiness and at least once for texting and driving. Mary Ellery Dep. 68:11-15; 93:12-16, Mar. 15, 2018. Ellery, however, still worked an average of 20 hours per week, while Plaintiff worked an average of 8 hours per week in her final months of employment.

AutoZone submits that Plaintiff's policy violations are well-documented in her disciplinary record, and notes that Plaintiff acknowledged that it would be reasonable for an employer to schedule less hours for an employee with poor

performance. With respect to Ellery, AutoZone argues that she was neither similarly situated to Plaintiff nor engaged in the same type of misconduct for purposes of demonstrating pretext.

Plaintiff has offered sufficient evidence of pretext to survive summary judgment. The close temporal proximity between Plaintiff's report of Schultz and the reduction in her hours, Childers and Summerer's hostile reactions to her claim of harassment, and the disparate treatment of her and Ellery, "create an inference of causation." *Worthington v. Brighton Ford, Inc.*, No. 13-cv-10249, 2014 WL 555186, at *9 (E.D. Mich. Feb. 12, 2014) (internal citation omitted). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that AutoZone engaged in retaliatory conduct in violation of Title VII and the ELCRA. *See id.* at *8 (noting that "[t]he analysis for retaliation claims under Title VII and the ELCRA is the same." (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004))).

## Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [28] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's hostile work environment, quid pro quo, and intentional infliction of emotional distress[3] claims are **HEREBY DISMISSED**. Remaining in this action are Plaintiff's retaliation claims in violation of Title VII and the ELCRA.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: November 20, 2018            Senior United States District Judge

---

[3] Plaintiff voluntarily dismissed her intentional infliction of emotional distress claim in her Response [31] to Defendant's Motion.